IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| **UNITED STATES OF AMERICA** | : CRIMINAL NO. 1:21-CR-251 |
| | : |
| v. | : (Judge Conner) |
| | : |
| **CARLA BROWN,** | : |
| | : |
| **Defendant** | : |

## MEMORANDUM

Defendant Carla Brown moves to suppress evidence obtained from her cell phone, which was seized following a traffic stop in May 2020 and searched in November 2023 pursuant to a warrant. Brown contends the three-and-a-half-year delay between the seizure and search was objectively unreasonable in violation of the Fourth Amendment to the United States Constitution. She also requests a hearing pursuant to Franks v. Delaware, 438 U.S. 154 (1978), to challenge the veracity of certain averments contained in the affidavit of probable cause attached to the government's warrant application. We will grant Brown's motion to suppress due to unreasonable delay.

I. **Factual Background**[1]

On May 14, 2020,[2] a trooper with the Pennsylvania State Police stopped a dark grey Dodge Durango heading westbound on Interstate 78 in Bethel Township,

---

[1] The following factual narrative derives primarily from the affidavit of probable cause attached to the government's search warrant application, along with the investigative report detailing the results of the search. (See Docs. 94-2, 94-4).

[2] The affidavit states that the stop occurred on April 14, 2020, but the parties agree the incident happened in May. (See Doc. 85 at 3; Doc. 93 at 7).

Lebanon County, for a window tint violation and for displaying a tinted registration plate cover. (See Doc. 94-2 ¶ 10, Doc. 94-4 at 1). Brown was in the passenger seat and her codefendant, William Shaw, was behind the wheel. (See Doc. 94-2 ¶ 10). During the stop, the trooper detected an odor of marijuana emanating from the vehicle. (See id. ¶ 11). Shaw admitted he lacked a valid driver's license. (See id.) When Brown opened her purse to retrieve her ID, the trooper saw she possessed a large amount of cash "packaged consistent with illegal proceeds from large drug transactions." (See id.) The cash "was rubber banded with rubber bands separating smaller quantities within the stack." (See id.)

      The trooper asked Shaw to exit the vehicle, and Shaw complied. (See id.) While speaking with the trooper, Shaw admitted there was a small amount of marijuana inside the Durango. (See id.) The trooper then asked Brown to exit the vehicle. (See id.) Investigators searched the vehicle and found a bag under the front passenger seat containing approximately 254 grams of a white rock-like substance believed to be crack cocaine and approximately 102 grams of a white powder believed to be cocaine hydrochloride. (See id. ¶ 12). Brown and Shaw were immediately arrested and Mirandized. (See id.) Troopers continued inspecting the vehicle and discovered several marijuana cigarettes and a bag containing marijuana. (See id.) They seized the large stack of cash from Brown's purse, an Apple watch, and two iPhones—one in an Incipio case belonging to Shaw and the other in a Bedazzled case belonging to Brown. (See id.) These items were transported to the Pennsylvania State Police barracks in Jonestown and entered

into evidence. (See id.) Investigators interviewed Shaw and Brown, at which time Shaw admitted to transporting the contraband to Pittsburgh. (See id. ¶ 13).

## II. Procedural History

The Commonwealth of Pennsylvania filed criminal complaints against Brown and Shaw in the Court of Common Pleas of Lebanon County the same day as their arrest. Fifteen months later, on September 1, 2021, a federal grand jury indicted the pair on one count each of conspiring to distribute and possessing with intent to distribute controlled substances in violation of 21 U.S.C. §§ 846 and 841(a)(1), respectively. Shaw pled guilty to both counts and the court sentenced him to concurrent terms of 60 months' imprisonment. Brown exercised her right to proceed to trial. On July 13, 2023, we scheduled a date-certain jury trial for Monday, December 18, 2023. The record shows that Special Agent Ryan Byrnes of the Drug Enforcement Administration applied for search warrants for both cell phones on November 7, 2023, secured the warrants on November 9, retrieved the phones from the Jonestown barracks on November 15, gave them to a forensic examiner two days later, and obtained the extraction data on November 30. (See Doc. 94-4 ¶¶ 3-7). Brown avers the government disclosed the existence of the warrants on December 4 and turned over the extraction data for her phone on December 5, less than two weeks before the commencement of trial.[3] Brown filed

---

[3] Brown asserts that none of the data contained on Shaw's phone has been disclosed as of December 6; however, she has not sought suppression of that evidence.

3

her suppression motions on December 6. The motions are fully briefed and ripe for disposition.

## III. Discussion

Reasonableness is the touchstone of the Fourth Amendment. Brigham City, Utah v. Stuart, 547 U.S. 398, 403 (2006). Otherwise permissible confiscations of property by law enforcement could transgress the Constitution if their "manner of execution unreasonably infringes possessory interests protected by the Fourth Amendment's prohibition on 'unreasonable seizures.'" See United States v. Stabile, 633 F.3d 219, 235 (3d Cir. 2011) (quoting United States v. Jacobsen, 466 U.S. 109, 124 (1984)). Courts scrutinize "temporal delay[s]" in securing search warrants because the infringement of an individual's possessory interests compounds with "each passing day." See id. (citing United States v. Mitchell, 565 F.3d 1347, 1349-51 (11th Cir. 2009) (*per curiam*) (holding that 21-day delay between seizure and search were unreasonable when based upon probable cause); United States v. Dass, 849 F.2d 414, 414-15 (9th Cir. 1988) (same for 7- to 23-day delay); see also United States v. Martin, 157 F.3d 46, 54 (2d Cir. 1988) ("[E]ven a seizure based on probable cause is unconstitutional if police act with unreasonable delay in securing a warrant."); accord United States v. Respress, 9 F.3d 483, 488 (6th Cir. 1993).

We assess the totality of the circumstances when determining whether investigative delays in a given case render the challenged seizure unreasonable. See United States v. Christie, 717 F.3d 1156, 1162 (10th Cir. 2013) (Gorsuch, J.) (citing United States v. Sokolow, 490 U.S. 1, 8 (1989)). To that end, we "must balance the nature and quality of the intrusion on the individual's Fourth

4

Amendment interests against the important of the governmental interests alleged to justify the intrusion." See Stabile, 633 F.3d at 235 (quoting United States v. Place, 462 U.S. 696, 703 (1983)). Factors to consider include "the significance of the interference with the individual's possessory interest," United States v. Laist, 702 F.3d 608, 613 (11th Cir. 2012), the duration of the delay, id. at 613-14 (citing Place, 462 U.S. at 709 (characterizing the "brevity" of the seizure as "an important factor")), whether the individual consented to the seizure, and any actions taken to recover the confiscated items, see Stabile, 633 F.3d at 235 (citing United States v. Johns, 469 U.S. 478, 487 (1985) (discounting respondents' interests in seized trucks and packages because they neither challenged legitimacy of seizure nor sought return of property)).

On the government's side of the ledger, we assess the justification for the delay, "whether the police diligently pursue[d] their investigation," see Place, 462 U.S. at 709, and any "overriding circumstances" that might have necessitated diverting law enforcement resources to other matters, see Stabile, 633 F.3d at 236 (quoting Mitchell, 565 F.3d at 1353). A lack of diligence combined with lengthy delays weigh heavily against a finding of reasonableness. See United States v. Burgard, 675 F.3d 1029, 1033 (7th Cir. 2012). Investigators undermine the criminal justice process when they seize property and then simply neglect to search it "for months or years . . . to determine whether it really does hold relevant evidence needed for trial or is totally irrelevant to the investigation and should be returned to its rightful owner." See Christie, 717 F.3d at 1162 (citing Burgard, 675

5

F.3d at 1033; Laist, 702 F.3d at 613-14; Martin, 157 F.3d at 54; Respress, 9 F.3d at 488).

Applying these factors to the matter *sub judice*, we conclude the prolonged seizure of Brown's cell phone was unreasonable.  People presumably have some possessory interests in their personal cell phones, and the centrality of modern smart phones to the daily lives of those who use them is beyond peradventure.  See Riley v. California, 573 U.S. 373, 385 (2014) ("[M]odern cell phones . . . are now such a pervasive and insistent part of daily life that the proverbial visitor from Mars might conclude they were an important feature of human anatomy."); cf. Stabile, 633 F.3d at 235 (citing Mitchell, 565 F.3d at 1351-52) (noting that "[c]omputers are relied upon heavily for personal and business use" and might contain "a universe of private information")).  Law enforcement significantly interfered with Brown's possessory interest by seizing her phone and retaining it for more than 42 months, which obviously cannot be characterized as a "brief" intrusion.  See Laist, 702 F.3d at 613 (citing Place, 462 U.S. at 709).  Although Brown did not consent to the seizure, her failure to seek return of her phone is a factor that weighs against her.  See Stabile, 633 F.3d at 235 (citing Johns, 469 U.S. at 487).

The government has a strong interest in deriving whatever relevant evidence it can from Brown's phone, such as communications with Shaw and others that might support a drug-trafficking conspiracy charge.  See Place, 462 U.S. at 704 (collecting cases discussing law enforcement interests).  However, the most significant factors supporting suppression are:  (1) the unusually excessive duration of the delay, and (2) the government's lack of diligence in pursuing their

6

investigation during that time. See Burgard, 675 F.3d at 1033. We are unaware of any cases involving a temporal gap between an initial seizure and a warrant application as large as the gap at issue here. Whether measured from the date of the initial seizure by Pennsylvania authorities on May 14, 2020 (42 months), or, more charitably, from the date federal prosecutors secured Brown's indictment on September 1, 2021 (26 months), the delay Brown confronts far and away exceeds that in the many precedents we have reviewed. See, e.g., United States v. Wright, 534 F. Supp. 3d 416, 422 (M.D. Pa. 2021) (Mariani, J.) (13 months); Christie, 717 F.3d at 1162 (5 months); Stabile, 633 F.3d at 235 (3 months); Laist, 702 F.3d at 614-15 (25 days); Martin, 157 F.3d at 54 (11 days); Burgard, 675 F.3d at 1030 (6 days); Johns, 469 U.S. at 481 (3 days). And, critically, the government has proffered no justification whatsoever for the delay, let alone compelling or "overriding" considerations. See Stabile, 633 F.3d at 236 (quoting Mitchell, 565 F.3d at 1353).

      The government instead relies upon Judge Mariani's recent opinion in Wright for the proposition that Brown's cell phone had inherent evidentiary value independently of its digital contents, such that there was no need to obtain a warrant in a timely manner. (See Doc. 94 at 9-10 (citing Wright, 534 F. Supp. 3d at 426)). But Wright is easily distinguishable. Police arrested Wright after seeing a bag of marijuana in his pocket. Wright, 534 F. Supp. 3d at 419. A search of Wright's person incident to his arrest revealed "*multiple* cell phones"—three, in fact—which the court characterized as "evidence of drug-trafficking" in itself. See id. at 419, 425 (citing United States v. Tutis, 845 F. App'x 122, 124 (3d Cir. 2021); United States v. Robinson, 529 F. App'x 134, 138 (3d Cir. 2013)) (emphasis added). Having

7

credited the government's assertion that the unusual number of cell phones in one person's possession was circumstantial evidence of crime regardless of their contents, the court concluded that any delay between the initial seizure and subsequent search "would be reasonable unless undermined by countervailing evidence," of which there was none. See id. at 426. Here, by contrast, there is no basis for inferring Brown and Shaw were involved in drug-trafficking on the bare fact that they each possessed a single cell phone, as the government recognizes. (See Doc. 94 at 9). *Per contra*, neither cell phone has "independent evidentiary value" separate and distinct from its data. See id. at 428. The government's reliance upon Wright is therefore unavailing.

      Lastly, we are troubled by the government's efforts to chalk up the misstatements in its submissions to the court as "simple mistake[s]" and "Scrivener's error[s]." (See Doc. 93 at 8, 10). Agent Byrne's affidavit of probable cause was plagued by more than the typographical error about what month the seizure occurred (April versus May). It also contained substantive misrepresentations about the investigative techniques supporting the warrant application, namely that it was "based on personal knowledge derived from . . . debriefings conducted by [Agent Byrne] or other law enforcement officers of confidential sources regarding this investigation, telephone toll analysis, and an active Title III wire intercept." (See Doc. 94-2 ¶ 3). None of that was true, as the government now concedes. (See Doc. 93 at 7-8 (acknowledging false bases of fact resulted from "using a previous affidavit as a template")). We appreciate the government's candor, but its lackadaisical approach to investigating this case does

8

not inspire confidence in the accuracy of its representations to the court. Given the substantial delay, the government's lack of diligence, and the late hour at which it disclosed the cell phone evidence to Brown on the eve of a date-certain trial that was scheduled more than five months ago, application of the exclusionary rule is warranted.

## IV. Conclusion

We will grant Brown's motion (Doc. 82) to suppress. An appropriate order shall issue.

/S/ CHRISTOPHER C. CONNER
Christopher C. Conner
United States District Judge
Middle District of Pennsylvania

Dated:   December 15, 2023